PERRY CREEK CRANBERRY CORPORATION, Respondent, v. HOPKINS AGRICULTURAL CHEMICAL COMPANY, Appellant.

*December 2, 1965—January 4, 1966.*

430

432

For the appellant there was a brief by *W. L. Jackman* and *Hart, Kraege, Jackman & Wightman,* all of Madison, and oral argument by *W. L. Jackman.*

For the respondent there was a brief by *Brazeau, Brazeau, Potter & Cole* of Wisconsin Rapids, and oral argument by *John M. Potter.*

HALLOWS, J. The plaintiff is the owner of a 36.80-acre cranberry marsh near Black River Falls, Wisconsin, and on June 6 and 9, 1962, dusted 34.02 acres with three percent Malathion Dust which it purchased from the defendant. Within a week the cranberry vines showed damage and ultimately produced no cranberries, while 2.78 acres which were not dusted with the malathion produced a normal crop of cranberries.

The complaint alleged two causes of action, one based on a misbranding under the Economic Poisons Act (sec. 94.676, Stats.[1]), because the plaintiff relied on the instructions on the label in using the Malathion Dust and as a result suffered damage to its cranberry vines; and the other grounded upon common-law negligence that the defendant knew or should have known the application of

---

[1] 94.676 "ECONOMIC POISONS; MISBRANDING. An economic poison is 'misbranded':

". . .

"(4) If the labeling does not contain instructions for use which are necessary for effective results and which, if complied with, are adequate for the protection of the user and public;

"(5) If the label does not contain a warning or caution statement which, if complied with, is adequate to prevent injury to man and vertebrate animals."

the Malathion Dust would be harmful to cranberry vines if applied to the vines when they were wet and consequently should have warned against such use. The answer of the defendant denied misbranding within the meaning of the Economic Poisons Act, the malathion was a cause of the damage, it was negligent and its negligence was the cause of the damage, and alleged a disclaimer.

The jury in its verdict found the malathion caused the damage to the plaintiff's 1962 cranberry crop and the defendant was negligent in failing to warn of the possible injury to cranberry vines if the powder was used on vines when they were wet, and determined the amount of damages in the sum of $24,000. On motions after verdict the trial court held the Economic Poisons Act protected vegetation from damage, the defendant had misbranded its product and such violation of the act was negligence *per se*. The court also held the jury's finding that malathion caused the damage was supported by sufficient credible evidence, that the plaintiff relied on the misbranding and as a matter of law such reliance together with the finding of the jury was causal and, lastly, the disclaimer on the label was invalid.

The defendant raises several issues on this appeal but we do not need to consider those related to common-law negligence because of our view that sec. 94.676 (4), Stats., was violated by the defendant, which violation was a cause of the plaintiff's damages. The defendant argues without merit, we think, that the Economic Poisons Act does not require labeling either in form of directions for use or as a warning designed to protect vegetation upon which the insecticide is used. It is the defendant's alternative position that at most the act only requires instructions for use which are reasonably necessary for effective results and warnings against only potential hazards known or those which should be known.

That at the time the malathion was delivered to the plaintiff in 50-pound paper bags there was attached to each bag a label (Exhibit 9), part of which is as follows:

## "CAUTION:

"Harmful if swallowed. Avoid prolonged breathing of dust. Avoid prolonged or repeated contact with skin. Wash thoroughly after using. Avoid contamination of feed and foodstuffs. Keep out of reach of children.

## "DIRECTIONS FOR USE

*"Cranberries:* For the control of leafhoppers and black-headed fireworms, use 65–70 lbs. of Hopkins 3% Malathion Dust per acre by airplane, or 45–55 lbs. per acre by ground equipment. Make thorough coverage applications. Apply as frequently as necessary to keep insects under control. Do not use within 3 days of harvest.

## "NOTICE

"Seller makes no warranty of any kind, express or implied, concerning the use of this product. Buyer assumes all risk of use or handling whether in accordance with directions or not."

An "economic poison" is defined in sec. 94.67 (1) (a), Stats., as "Any substance or mixture of substances labeled, designed or intended for use in preventing, destroying, repelling or mitigating any insects, rodents, predatory animals, fungi, nematodes, weeds, and other forms of plant or animal life or viruses which the department declares a pest." Sec. 94.676 defines "misbranded," among other things as "(4) If the labeling does not contain instructions for use which are necessary for effective results and which, if complied with, are adequate for the protection of the user and public; (5) If the label does not contain a warning or caution statement which, if complied with, is adequate to prevent injury to man and vertebrate animals."

In construing a statute the court "must ascertain the legislative intention as disclosed by the language of the statute in relation to its scope, history, context, subject matter, and the object intended to be remedied or accomplished." *Scanlon v. Menasha* (1962), 16 Wis. (2d) 437, 442, 114 N. W. (2d) 791. The general rule is to give all words and phrases their common and approved usage excepting technical words and phrases which have a peculiar meaning in the law. Sec. 990.01 (1), Stats. *Nekoosa-Edwards Paper Co. v. Public Service Comm.* (1959), 8 Wis. (2d) 582, 99 N. W. (2d) 821. The main emphasis in the construction of sec. 94.676 by both parties is upon the legislative history of the act in relation to the federal Economic Poisons Act. It is without dispute the Wisconsin act was taken and drafted from the proposed Economic Poisons Act prepared by the Wisconsin Committee on Agriculture and modeled after the federal act. On the one hand, it is argued all that the drafting attempted to do was to shorten the proposed Economic Poisons Act without any substantial change in content and, on the other hand, it is argued the changes made were substantial and show a different intention than that expressed in the federal act.

The purpose and scope of the Wisconsin act were to extend protection from economic poison, we believe, beyond that afforded by the common law. It is pointed out that prior to the act the consumers were not properly protected under Wisconsin law because many economic poisons were highly toxic to man and dangerous to plants, to animals, and to public health and safety. Wisconsin Legislative Council Reports, Agricultural, Vol. 2, part 1, 1950–1951, pp. 53, 57, sec. 2.

The Federal Insecticides Act, 7 USCA, secs. 135–135k,[2] which was enacted in 1947, provides for a label contain-

---

[2] 7 USCA, sec. 135. "DEFINITIONS: . . .
"(z) The term 'misbranded' shall apply—
". . .

ing instructions for use and a warning. The act also provides there is a misbranding if the insecticide is used in accordance with instructions or with common practice and injury results to man, vertebrate animals or vegetation other than weeds to which it is applied or to the person applying the poison. By sec. 135 (z) (2) (c) an economic poison is misbranded if the label does not contain directions for use which are necessary and adequate for the protection of the public. This subsection should be read with subs. 135 (z) (2) (g) which provides that in case of an insecticide when used as directed or in accordance with common practice it must not be injurious to vegetation and other objects when applied to them. Under the federal act subs. 135 (z) (2) (d) a label must contain a warning which is necessary and adequate to prevent injury to man, animals and vegetation, but in view of subs. (z) (2) (g) that subsection would seem to apply to situations other than when the poison is used in accordance with the instructions or common practice. But see *McClanahan v. California Spray-Chemical Corp.* (1953), 194 Va. 842, 75 S. E. (2d) 712.

These three sections were combined into two sections in the Wisconsin act with some slight modifications. The

---

"(2) to any economic poison—

". . .

"(c) if the labeling accompanying it does not contain directions for use which are necessary and if complied with adequate for the protection of the public;

"(d) if the label does not contain a warning or caution statement which may be necessary and if complied with adequate to prevent injury to living man and other vertebrate animals, vegetation, and useful invertebrate animals;

". . .

"(g) if in the case of an insecticide, nematocide, fungicide, or herbicide when used as directed or in accordance with commonly recognized practice it shall be injurious to living man or other vertebrate animals, or vegetation, except weeds, to which it is applied, or to the person applying such economic poison."

Wisconsin act provides for a label with more detailed instructions and also a warning. Sec. 94.676 (4) of the Wisconsin act requires more than sec. 135 (z) (2) (c) of the federal act, and to avoid misbranding the label must contain instructions for use which are necessary for effective results and adequate for the protection of the user, besides adequate for the protection of the public. While we agree with the defendant the terms "user and the public" do not include vegetation, the instruction for use requirement is an enlargement of sec. 135 (z) (2) (c) by requiring instructions for use which are necessary for effective results. Furthermore, this section did not carry over from sec. 135 (z) (2) (g) of Title 7 the language which provided certain economic poisons were misbranded if used "in accordance with commonly recognized practice" and they produced injury to vegetation and other objects. Because of this and the requirement of more definite instructions for use the Wisconsin act gives substantially the same protection, if not more, than the federal act.

True, sec. 94.676 (5), Stats., does not require a warning of damage to vegetation but we think sec. 94.676 (4) accomplishes the same result by its requirement of instructions necessary for an effective result. An effective result can hardly include the killing of vegetation as well as the insects. "Effective result" means the insecticide will perform the function of an insecticide without damage to the object which is to be benefited by the use of the economic poison; in short, the remedy should cure, not destroy the patient. We do not consider the federal-act requirement of a positive warning against damage to vegetation to be significant. We see no difference in result in warning against use of malathion on wet vines and a required instruction directing malathion to be used only on dry vines. Sec. 94.676 (4) requires instructions for use which are not only effective but safe and in addition sub. (5) requires a warning as added emphasis to

protect the objects named. Consequently, under the Wisconsin act if the insecticide causes damage to an object upon which the poison is applied when the instructions are followed, the product is misbranded.

A violation of sec. 94.676 (4), Stats., constitutes negligence *per se* because the violation is made a criminal offense by virtue of the prohibition in sec. 94.70 (1) (g), subject to the penalties provided in sec. 94.71 (1). Violations of criminal statutes with some exceptions not applicable here have been held to constitute negligence *per se* in a civil action for damages. *McAleavy v. Lowe* (1951), 259 Wis. 463, 49 N. W. (2d) 487; *Farmers Mut. Automobile Ins. Co. v. Gast* (1962), 17 Wis. (2d) 344, 117 N. W. (2d) 347. And specifically, a violation of an analogous law (Commercial Feed), sec. 94.72 (14) (b), was held to be negligence *per se* in a civil action to recover damages. *Arndt Brothers Minkery v. Medford Fur Foods* (1957), 274 Wis. 627, 80 N. W. (2d) 776; *Metz v. Medford Fur Foods* (1958), 4 Wis. (2d) 96, 90 N. W. (2d) 106; *Tri City Fur Foods v. Ammerman* (1959), 7 Wis. (2d) 149, 96 N. W. (2d) 495.

The defendant contends a reasonable construction of sec. 94.676 (4), Stats., does not require instructions which limit the application of the insecticide to cranberry vines when they are dry and not in the hook stage or, conversely, a warning not to use the insecticide when cranberry vines were wet and in the hook stage. This argument proceeds on the premise there was no evidence the defendant knew or should have known from any reasonable testing that such use of insecticide would damage the vines. There was positive testimony the defendant should have known that the Malathion Dust should not be used while the vines were in blossom but such a warning would not have prevented the use by the plaintiff in the hook stage. This argument of the defendant incorporates into the statute the rule of foreseeability and common-law negligence which we think must be rejected because the

purpose and context of the section effectively forecloses such an interpretation.

The violation of the act is sufficient to sustain a verdict in favor of the plaintiff if the record shows there was reliance upon the instruction for use of the Malathion Dust and the malathion was a substantial factor in causing the damage to the cranberry vines. This raises the question of whether the jury's finding that the malathion did damage the cranberry vines is sustained by sufficient credible evidence. The defendant argues the testimony of expert witnesses of the plaintiff cannot support the verdict because of the lack of probative value of such testimony. Two laymen testified for the plaintiff that in their opinion the damage claimed was caused by Malathion Dust. No objection was made to the competency of these witnesses to testify as experts. One of the witnesses, however, was stated to be a competent expert by a witness for the defendant. But the defendant argues the question solely is one of the probative value of the testimony and relies on *Bucher v. Wisconsin Central R. Co.* (1909), 139 Wis. 597, 120 N. W. 518. We do not think that case is controlling. Opinion evidence of lay witnesses regarding matters within their field of experience is generally held to be competent and the probative force of such testimony is for the trier of the facts. *Milwaukee v. Johnston* (1963), 21 Wis. (2d) 411, 124 N. W. (2d) 690; *Smith v. Atco Co.* (1959), 6 Wis. (2d) 371, 94 N. W. (2d) 697, 74 A. L. R. (2d) 1095. See Anno. Admissibility of opinion evidence of lay witnesses as to diseases and physical condition of animals, 49 A. L. R. (2d) 932.

In the instant case the jury had the testimony of the plaintiff's witnesses, one of whom was an expert cranberry grower in Wisconsin, to weigh against the testimony of an expert from the eastern coast of the United States who had experience in raising cranberries but not in marshes, and another witness who stated he did not know the cause of the damage. We think the testimony of

the plaintiff's witnesses, together with the fact that the part of the cranberry marsh which was dusted with malathion produced no cranberries while the part of the marsh which was not dusted did produce a normal crop of cranberries is sufficient credible evidence to support the finding that the Malathion Dust caused the damage. Furthermore, the damage to the cranberry vines began to appear about two days after the first application of the malathion and a neighbor who also applied malathion at about the same time testified his plants were damaged.

It is true no general causation question was given the jury but under the first cause of action there was no necessity. Such ultimate question necessarily included the element of reliance of the plaintiff on the misbranding and the effect of the Malathion Dust on the vines. The complaint alleged reliance upon the misbranding and the fact of reliance was not denied by the defendant's pleadings and must be taken as true. Sec. 263.26, Stats. Consequently, the trial court could find as a matter of law, which it did, that the plaintiff relied on the misbranding in following the inadequate instructions on the label and since the jury found that malathion did in fact cause the damage, these two findings considered together establish the necessary causal connection between the breach of the statute and the damage suffered. No question is raised concerning the amount of the damages.

Lastly, the defendant argues that its disclaimer on the label was valid and prevents recovery. This disclaimer may be sufficient to negate any implied warranty and common-law negligence—a question we do not now decide. But the disclaimer is not sufficient to insulate the defendant from the strict duty imposed upon it as a purveyor of economic poisons by the Economic Poisons Act. The use of a disclaimer to avoid the act would render it of no value. Since the Economic Poisons Act is a criminal statute and was passed to protect the safety of the public, a disclaimer of liability for its breach is against public policy, as was held in *Metz v. Medford Fur*

*Foods, supra,* in relation to a similar statute involving mink food. This is practically conceded by the defendant if the act is construed as it has been.

*By the Court.*—Judgment affirmed.