Emery L. WALKER, Plaintiff in error,

v.

STATE of Wisconsin, Defendant in error-Petitioner.

Supreme Court

*No. 79–047–CR. Argued October 1, 1980.—*
*Decided January 6, 1981.*

(Also reported in 299 N.W.2d 861.)

For the defendant in error-petitioner the cause was argued by *Chris Heikenen,* assistant attorney general, with whom on the briefs was *Bronson C. La Follette,* attorney general.

For the plaintiff in error there was a brief and oral argument by *William J. Tyroler,* assistant state public defender.

DAY, J. This is a review of a decision of the Court of Appeals, 92 Wis.2d 690, 286 N.W.2d 2 (Ct. App. 1979), reversing a judgment of conviction and order of the Circuit Court for Kenosha County, HON. HAROLD M. BODE, Circuit Judge.

The principal question on review is: Did the trial court err in denying the defendant's request for submission of a verdict of endangering safety by conduct regardless of life[1] (endangering safety) as a lesser included offense of attempted first-degree murder?[2] We hold that the

---

[1] Sec. 941.30, Stats 1975. "**Endangering safety by conduct regardless of life.** Whoever endangers another's safety by conduct imminently dangerous to another and evincing a depraved mind, regardless of human life, may be fined not more than $1,000 or imprisoned not more than 5 years or both." Amended L. 1977, c. 173, sec. 40, effective June 1, 1978.

[2] Sec. 940.01, Stats. 1975. "**First-degree murder.** (1) Whoever causes the death of another human being with intent to kill that person or another shall be sentenced to life imprisonment.

"(2) In this chapter 'intent to kill' means the mental purpose to take the life of another human being." Amended L. 1977, c. 173, sec. 5, effective June 1, 1978.

"939.32. **Attempt.** (1) Whoever attempts to commit a felony or a battery as defined by s. 940.20 or theft as defined by s. 943.30 may be fined or imprisoned or both not to exceed one-half the maximum penalty for the completed crime; except that for an attempt to commit a crime for which the penalty is life imprisonment, the actor may be imprisoned not more than 30 years. Whoever attempts to commit a battery as defined in s. 940.205 may be imprisoned not more than one year in the county jail.

"(2) An attempt to commit a crime requires that the actor have an intent to perform acts and attain a result which, if

refusal to submit the verdict was prejudicial error and affirm the Court of Appeals' reversal of the trial court.

The defendant also alleges that the trial court committed reversible error by instructing the jury on the loss of the self-defense privilege by provocation[3] and by giving the "natural and probable consequences" language of the model jury instruction on attempted first-degree murder.[4] Although these issues were not decided by the Court of Appeals, they will be discussed later in this opinion.[5]

This prosecution followed events that occurred in the early morning hours of September 30, 1977, when Emery Walker (defendant) and Robert Piper shot each other outside the Model Tavern in Kenosha, Wisconsin. This shooting was the end result of events that began the evening before, when Donna Johnson, the defendant's friend, encountered Piper while walking down a street. She testified that Piper threatened her with a gun and asked her for "dope." At trial, Piper admitted asking her for marijuana and showing her a gun, but denied threatening her. She later related the encounter to the

---

accomplished, would constitute such crime and that he does acts toward the commission of the crime which demonstrate unequivocally under all the circumstances, that he formed that intent and would commit the crime except for the intervention of another person or some other extraneous factor." Amended L. 1977, c. 173, sec. 2, effective June 1, 1978.

[3] Wis J I—815–CR.

[4] The challenged passage of the instruction reads as follows:

"When there are no circumstances to prevent or rebut the presumption, the law presumes that a reasonable person intends all the natural, probable and usual consequences of his deliberate acts. If one person assaults another violently with a dangerous weapon, likely to kill, then when there are no circumstances to prevent or rebut the presumption, the legal and natural presumption is that death was intended." Wis J I—1105–CR.

[5] On March 3, 1980, this court granted the defendant's motion to clarify issues on review and ordered the parties to argue the issues not reached by the Court of Appeals.

defendant, who then sought out Piper at a tavern. According to the defendant, on his first encounter with Piper, Piper threatened him with a gun and asked defendant to supply Piper with some drugs. Piper denied the threat. The defendant then left the tavern with his friends, drove to another friend's house and obtained a gun.

Upon returning to the tavern, the defendant went inside, talked with friends, had a brief conversation with Piper, and after five minutes, went outside. Piper followed shortly thereafter.

The witnesses gave conflicting versions of the events of the shooting which followed.

The defendant testified that once outside, he asked Piper why he pulled a gun on Miss Johnson. Piper then pulled two guns.[6] Defendant struck out at Piper's face and missed, the motion turning his body to Piper at a forty-five degree angle. Piper then shot him in the leg and defendant fell back. The defendant then ran, shooting back in Piper's direction. He shot three times, once toward Piper and twice in the air. Defendant also stated he did not intend to shoot Piper, but that he shot in Piper's direction after he had been shot and was running, trying to get away.

Piper, on the other hand, testified that as he approached the defendant, the defendant said, "You're a dead man" and shot him in the side. Piper then staggered back, drew his two pistols and shot at the defendant as the defendant ran away.

Randy Walker, the defendant's brother, testified that Piper fired the first shot. He stated that Piper approached defendant on the sidewalk outside the tavern with no guns in his hands. He stepped within two feet of the defendant, who shoved at Piper with his hands.

---

[6] The record shows that one of Piper's pistols was a starting gun, which shot only blank cartridges.

Piper then drew both pistols from his pocket and shot defendant who then shot at Piper while backing away.

The other eyewitnesses testified but neither could determine who shot first.

On September 30, 1977, the defendant was charged with attempted first-degree murder. He pled not guilty and the case was tried before a jury. At the close of evidence, the trial court submitted two verdicts to the jury: (1) guilty of attempted first-degree murder, and (2) not guilty. The jury was instructed on the privilege of self-defense,[7] on retreat[8] and on the loss of the self-defense privilege by provocation.[9] The latter two instructions were given over the objection of the defendant. The trial court also refused to submit the defendant's requested verdict on the lesser included offense of endangering safety.

The jury returned a verdict of guilty. Judgment of conviction was entered on March 2, 1978, and defendant was sentenced to an indeterminate term of not more than fifteen years. Post-conviction motions were denied on August 28, 1978.

Writs of error were filed by the defendant on January 4, 1979.

The Court of Appeals held that the trial court erred in refusing to submit a verdict on endangering safety, reversed the judgment and order of the trial court and remanded the cause for a new trial. *Walker v. State,* 92 Wis.2d 690, 286 N.W.2d 2 (Ct. App. 1979).

The state petitioned this court to review that decision, which was granted on January 8, 1980. Oral argument was heard on this case and *Hawthorne v. State,* 99 Wis.2d 673, 299 N.W.2d 866 (1981), and the cases were decided together with *Cartagena v. State,* 99 Wis.2d 657, 299 N.W.

---

[7] Wis J I—805–CR.

[8] Wis J I—810–CR.

[9] Wis J I—815–CR.

2d 872 (1981). In each of these cases, the defendant was charged with attempted first-degree murder, claimed the privilege of self-defense and requested submission to the jury of the lesser offense of endangering safety which was denied.

After oral arguments were heard, this court ordered the parties to submit supplemental briefs restricted to the question: Is endangering safety a lesser included offense of attempted first-degree murder, consistent with our opinion in *Randolph v. State*, 83 Wis.2d 630, 266 N.W.2d 334 (1978) ?

In *Hawthorne v. State, supra,* this court reaffirmed its prior holdings that endangering safety is a lesser included offense of attempted first-degree murder. We also noted in *Hawthorne* that submission of a lesser included offense is proper only when there are reasonable grounds in the evidence both for acquittal on the greater charge and conviction on the lesser offense, and that it is prejudicial error if the court improperly fails to submit the lesser included offense to the jury. Finally, we found that a claim of self-defense to a charge of attempted first-degree murder does not necessarily preclude submission of the included offense of endangering safety.

These were not the tests applied by the trial court.[10]

---

[10] The trial court in refusing the requested endangering safety verdict reasoned:

"I don't think that the Court is obligated to give a lesser included offense charged with respect to a lesser included offense for a number of reasons.

"First of all, because, I think, it's grossly unfair to charge a defendant with one crime, and then because the state may or may not have proven that crime, force him to chance his freedom on whether or not a lesser crime was committed, so far [sic] that reason among others. And furthermore, because I think there is evidence in this record which if believed by the jury would warrant their finding of guilty as to the charge made in the information.

"It is for that reason that I believe under all the circumstances it would be grossly unfair to this defendant to give a lesser in-

The Court of Appeals correctly analyzed the evidence in this case. *Walker v. State, supra.* The defendant admitted to shooting Piper, but claimed that he acted in self-defense. Clearly, if the jury chose to believe the defendant's self-defense claim, it could acquit him of the greater charge. Nevertheless, this was not the only reasonable view of the evidence the jury might have taken. Had the jury found that the defendant failed to properly establish self-defense, but also found a reasonable doubt as to the element of intent to kill, then as the Court of Appeals stated:

"Without either the privilege of self-defense or an intent to kill, Walker's action falls clearly within [endangering safety]." *Walker,* 92 Wis.2d at 694.

The State argues on review for the first time in this litigation that the defendant is "bound" by his testimony. In its brief, the State argues that the defendant's testimony:

". . . was that he acted in self-defense, and if believed, was sufficient to compel acquittal on that basis. *Walker,* 92 Wis.2d at 693. Consequently, self-defense was submitted to the jury along with the charge of attempted first-degree murder, and that is all the defendant was entitled to."

The "rule" that a defendant is bound by his testimony was stated by this court in *Boyer v. State,* 91 Wis.2d 647, 284 N.W.2d 30 (1979), citing as authority *Brook v. State,* 21 Wis.2d 32, 47, 123 N.W.2d 535 (1963). The only mention of such a rule in *Brook* appears in a concurring opinion of a single justice where it is stated:

"In my opinion the defendant is bound by his own testimony and if his version of the affair were believed,
cluded instruction. He's guilty or not guilty of the charge made in the information, in my judgment."

the first shot would be an accidental incident of a physical struggle." 21 Wis.2d at 47.

But the case at bar is distinguishable from *Boyer*. In *Boyer*, the defendant denied any intentional act. He claimed his acts were wholly accidental, and if his testimony was true, he committed no crime.

Walker, on the other hand, admitted that he intentionally shot in Piper's direction, without intending to hit him, and claimed the privilege of self-defense. If the jury found unreasonable the defendant's belief that force likely to cause death or great bodily harm was necessary,[11] or if it found that defendant had no claim of privilege because he provoked the attack and that he failed to withdraw from the fight and notify Piper of his withdrawal,[12] his defense would fail.

---

[11] Sec. 939.48, Stats. 1977. **"Self-defense and defense of others.** (1) A person is privileged to threaten or intentionally use force against another for the purpose of preventing or terminating what he reasonably believes to be an unlawful interference with his person by such other person. The actor may intentionally use only such force or threat thereof as he reasonably believes is necessary to prevent or terminate the interference. He may not intentionally use force which is intended or likely to cause death or great bodily harm unless he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself."

[12] Sec. 939.48, Stats. 1977. **"Self-defense and defense of others.** . . . (2) Provocation affects the privilege of self-defense as follows:

"(a) A person who engages in unlawful conduct of a type likely to provoke others to attack him and thereby does provoke an attack is not entitled to claim the privilege of self-defense against such attack, except when the attack which ensues is of a type causing him to reasonably believe that he is in imminent danger of death or great bodily harm. In such a case, he is privileged to act in self-defense, but he is not privileged to resort to the use of force intended or likely to cause death to his assailant unless he reasonably believes he has exhausted every other reasonable means to escape from or otherwise avoid death or great bodily harm at the hands of his assailant.

But that would not by itself preclude the jury from finding a reasonable doubt as to the defendant's intent to kill Piper. They could instead find him guilty of endangering another's safety by conduct regardless of life.[13]

■

Since this reasonable view of the evidence would support an acquittal of the greater charge and conviction on the lesser, it was prejudicial error to refuse to submit the lesser offense of endangering safety.

We therefore affirm the decision of the Court of Appeals ordering a new trial.

The defendant also challenged the trial court's instructions to the jury on the qualified and absolute loss of the self-defense privilege. The challenged instruction was given as follows:

"The criminal code of Wisconsin provides that a person who engages in unlawful conduct of a type likely to provoke others to attack him, and who thereby does provoke an attack, is not entitled to claim the privilege of self-defense against such attack, except when the attack which ensues is of a type causing him reasonably to believe that he is in imminent danger of death or great bodily harm.

"In such a case, he is privileged to act in self-defense, but he is not privileged to resort to the use of force intended or likely to cause death or great bodily harm to his assailant unless he reasonably believes he has exhausted every other reasonable means to escape from or otherwise avoid death or great bodily harm at the hands of his assailant.

---

"(b) The privilege lost by provocation may be regained if the actor in good faith withdraws from the fight and gives adequate notice thereof to his assailant.

"(c) A person who provokes an attack, whether by lawful or unlawful conduct, with intent to use such an attack as an excuse to cause death or great bodily harm to his assailant is not entitled to claim the privilege of self-defense."

[13] Sec. 941.30, Stats. 1977.

"A person who provokes an attack, whether by lawful or unlawful conduct, with intent to use such an attack as an excuse to cause death or great bodily harm to his assailant, is not entitled to claim the privilege of self-defense."

These instructions correctly state the effect of provocation on the privilege of self-defense.[14]

There was evidence to support the view that the defendant provoked the attack on Piper. He returned to the tavern with a gun in plain view, located Piper in the tavern and told him he was ready. According to Piper's testimony, once he and the defendant were outside the tavern, the defendant told him, "you're a dead man" and shot him. Piper then shot back at defendant who ran away firing back at Piper. The jury might have found that the defendant provoked Piper's attack on him. If the defendant provoked the attack and did so as an excuse to cause Piper's death, the jury could have found that he was not entitled to claim self-defense. The evidence supported the giving of these instructions.

Defendant has also challenged the portion of the standard jury instruction given at trial providing that:

"When there are no circumstances to prevent or rebut the presumption, the law presumes that a reasonable person intends all the natural, probable and usual consequences of his deliberate acts. If one person assaults another violently with a dangerous weapon, likely to kill, then when there are no circumstances to prevent or rebut the presumption, the legal and natural presumption is that death was intended." Wis J I—1105–CR.

The defendant alleges that this instruction deprived him of his rights to due process and trial by jury. This identical instruction was upheld by this Court in *Muller v. State*, 94 Wis.2d 450, 289 N.W.2d 570 (1980). We ad-

---

[14] Sec. 939.48(2), Stats. 1977, *supra*, (footnote 11, page 694).

here to that decision and find no constitutional infirmities in the challenged instructions.

*By the Court.*—The decision of the Court of Appeals is affirmed and the cause remanded to the Circuit Court for Kenosha County for a new trial.