TERRELL, Plaintiff in error, v. STATE, Defendant in error.

Supreme Court

No. 77–291–CR. *Submitted on briefs November 7, 1979.—Decided December 4, 1979.*
(Also reported in 285 N.W.2d 601.)

For the plaintiff in error the cause was submitted on the brief of *Howard B. Eisenberg,* state public defender, and *Barbara B. Berman,* assistant state public defender.

For the defendant in error the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Thomas J. Balistreri,* assistant attorney general.

HEFFERNAN, J. The only question presented on this appeal from Eugene Terrell's conviction for second-de-

gree murder is whether the evidence at trial justified the submission to the jury of a second-degree murder instruction and verdict. We conclude that it did, and we affirm the judgment entered by the court following the jury's verdict of guilty. We also affirm the order that denied a motion for a new trial.

The charge, originally for first-degree murder, arose out of an argument at an "after-hours" drinking place in the City of Milwaukee. The evidence, based solely on two statements of the defendant, is undisputed. The defendant Terrell and the deceased Cobbs were acquaintances, but on the evening of the killing, November 8, 1975, they argued about a small amount of money which Terrell borrowed from Cobbs' wife. The altercation commenced at Jeannie's Place and continued at an apartment used as an "after-hours" tavern.

Cobbs and Terrell went to a front room of the apartment, where they were alone. According to Terrell's statements, Cobbs said he did not like what was going on between his wife and Terrell. He then hit Terrell and knocked him to the floor and came at him. Terrell pulled a .25 caliber pistol from his pocket and shot several times from a distance of about two feet.

Cobbs died a short time later. Terrell was arrested in Hattiesburg, Mississippi. At Hattiesburg, he gave a statement to the local police which recounted the facts summarized in this opinion. Another statement, almost identical in content, was later given to the Milwaukee Police Department.

At the trial, brought on the charge of first degree murder, the state primarily relied upon the defendant's two confessions. The defense rested without offering any testimony.

Prior to submission to the jury, the defense asked for a manslaughter instruction and verdict based on the theory of the use of excessive force in the exercise of

the privilege of self defense. The state asked for first-degree and second-degree murder instructions. The court complied with both requests and submitted verdicts in respect to first-degree murder, second-degree murder, and manslaughter. The jury returned a verdict of guilty to second-degree murder.

Terrell's argument on appeal is simple. He asserts that there was no evidence to justify a second-degree murder verdict. He asserts in his appeal brief that there was "no evidence . . . [to] negate the defendant's intent to kill the victim." Accordingly, he argues that his objection at trial to a second-degree murder instruction and verdict must be sustained, that the judgment of guilt be set aside, and that only an instruction in respect to first-degree murder and an instruction in respect to manslaughter in self defense should have been given. As a corollary to this argument, he asserts that the failure to make a finding of guilty of murder in the first degree is an acquittal on that charge, and, in accordance with double jeopardy principles, he cannot again be tried for that offense. He asks that the conviction be reversed and the case dismissed or, alternatively, that the cause be remanded for trial on the question of manslaughter only.

Because we find that the evidence warranted a second-degree murder instruction and verdict, we affirm.

The propriety of the first-degree murder instruction is not questioned. The question is whether, under the evidence, it also was appropriate to instruct on the offense of second-degree murder.

The court has repeatedly stated that, to justify instructions on a lesser degree of homicide, there must be a reasonable basis in the evidence for acquittal of the greater charge and a reasonable basis for conviction on the lesser. *Whitaker v. State,* 83 Wis.2d 368, 265 N.W.2d

575 (1978); *McAllister v. State,* 74 Wis.2d 246, 246 N.W.2d 511 (1976); *State v. Bergenthal,* 47 Wis.2d 668, 178 N.W.2d 16 (1970). We said in *Bergenthal,* at 674–75:

" '. . . if the evidence, in one reasonable view, would suffice to prove guilt of the higher degree beyond a reasonable doubt, and if, under a different, but reasonable view, the evidence would suffice to prove guilt of the lower degree beyond a reasonable doubt, but leave a reasonable doubt as to some element included in the higher degree but not in the lower, the court should, if requested, submit the lower degree as well as the higher. . . .' [quoting *Zenou v. State,* 4 Wis.2d 655, 668, 91 N.W.2d 208 (1958)]

"The key word in the rule is 'reasonable.' The rule does not suggest some near automatic inclusion of all lesser but included offenses as additional options to a jury. Only if 'under a different, but reasonable view,' the evidence is sufficient to establish guilt of the lower degree and also leave a reasonable doubt as to some particular element included in the higher degree but not the lower, should the lesser crime also be submitted to the jury. . . . The purpose of multiple verdicts is to cover situations where under different, but reasonable, views of the evidence there are grounds either for conviction of the greater or of the lesser offense. The lesser degree verdict is not to be submitted to the jury unless there exists reasonable grounds for conviction of the lesser offense and acquittal on the greater."

The sole difference between first- and second-degree murder is that first-degree murder requires a specific intent to kill. *Johnson v. State,* 85 Wis.2d 22, 270 N.W. 2d 153 (1978); see sec. 940.01(2), Stats. 1975. Second-degree murder is defined by sec. 940.02 as causing "the death of another human being by conduct imminently dangerous to another and evincing a depraved mind, regardless of human life . . . ." In *State v. Weso,* 60 Wis. 2d 404, 411–12, 210 N.W.2d 442 (1973), we said:

"A depraved mind has a general intent to do the acts and the consciousness of the nature of the acts and possible result but lacks the specific intent to do the harm."

Because the instruction on first-degree murder is not questioned by either the state or the defendant, we do not explore the question of whether that instruction should have been given. Assuming, as both parties do, that a first-degree instruction under one reasonable view of the evidence should have been submitted, was it proper, under the guidelines of *Bergenthal*, to also submit a second-degree murder instruction.

The trial record reveals that the claim asserted in the appellant's brief, that there was a specific intent to kill, is inconsistent with the defendant's request for an instruction of manslaughter. The defendant's confessions, which were the only evidence at trial relating to the defendant's intent or the events at the time of the shooting, also reveal facts inconsistent with the specific intent to kill.

In the confessions, Terrell stated that Cobbs hit him and knocked him down, and then came at him with his arms extended. Terrell, who was then on the floor, pulled a pistol from his pocket and shot at a distance of two feet. Terrell said he did not know how many cartridges were in the weapon or how many shots he fired. He said that his mind "was like a total blank." The evidence also shows that Cobb was shot in widely separate parts of his body, a fact which could reasonably demonstrate to the jury that Terrell did not aim at vital portions of Cobbs' body with the specific intent to kill. The evidence of the police officer who investigated at the scene also indicates that some shots struck the wall and did not hit Cobbs.

Under one reasonable view, this evidence demonstrates that Terrell's conduct was imminently dangerous and

evinced a depraved mind regardless of human life. Under that view, it could also be reasonably said that the evidence negated the specific intent to kill.

Under this view, which the jury reasonably could have reached, the situation is similar to that discussed in *Radej v. State*, 152 Wis. 503, 140 N.W. 21 (1913). In that case, Radej, who was responding to calls of help from an elderly woman, walked behind her assailant, drew a revolver, placed it at the back of the deceased's head, and pulled the trigger. He claimed that he only intended to frighten the deceased. Radej, who was found not guilty of first-degree murder, but guilty of second-degree murder, asserted on appeal that "in such circumstances that the offense would be murder in the first degree and nothing else, and, therefore, a conviction of murder in the second degree cannot stand." (at 510) The court said in response to Radej's argument, and we believe the language is appropriately applied here:

"[T]he jury [had] a right, as was supposed, under all the circumstances, shadowy though the matter appeared, to conclude there was some reasonable doubt as to there having been a distinct intent to kill, and that the accused had no right to complain of the jury having taken him at his word, notwithstanding the unreasonableness thereof as to such intent . . . ." (at 514)

Although there was evidence under different but reasonable views which impelled the court to submit a first-degree murder and manslaughter instructions, the evidence was clearly sufficient under any view to warrant a second-degree murder instruction and to sustain the jury's verdict of guilty. Terrell's act of shooting at Cobb at close range, even without the specifically proved intent to kill, evinced that Terrell's state of mind at the time was without regard to whether Cobb lived or died.

The trial court correctly instructed the jury on second-degree murder, and the jury, on the basis of sufficient evidence, returned a verdict of guilty on that charge.

*By the Court.*—Judgment and order affirmed.