STATE of Wisconsin, Plaintiff-Respondent,

v.

William LEACH, Defendant-Appellant.†

Court of Appeals

*Nos. 83–2326–CR, 83–2327–CR, 83–2328–CR, 83–2329–CR. Submitted on briefs October 17, 1984.—Decided December 3, 1984.* (Also reported in 363 N.W.2d 234.)

† Petition to review granted.

340

For the defendant-appellant the cause was submitted on the briefs of *Donald T. Lang,* assistant state public defender, of Milwaukee.

For the plaintiff-respondent the cause was submitted on the briefs of *Bronson C. La Follette,* attorney general, with *Thomas J. Balistreri,* assistant attorney general, of counsel, of Madison.

Before Wedemeyer, P.J., Moser, and Sullivan, JJ.

WEDEMEYER, P.J. William Leach appeals from judgments of conviction and an order denying his motion for a new trial. Leach raises four claims of error: (1) he was denied his constitutional rights to due process and effective assistance of counsel because he was compelled to proceed to trial while suffering from amnesia and thus unable to assist counsel in his own defense; (2) he was denied effective assistance of counsel by his trial counsel's failure to request an instruction on endangering safety by conduct regardless of life; (3) the trial court erred by directing a verdict against him at the sanity phase of his bifurcated trial; and (4) the trial court erred by joining for trial charges relating to four separate incidents.

We hold the following: (1) Leach did not establish he was suffering from amnesia to the extent that he was incompetent to stand trial or unable to effectively assist his counsel; (2) Leach was not entitled to an instruction on endangering safety; (3) the trial court improperly directed the verdict against Leach at the sanity phase; and (4) the four incidents of criminal activity ought not to have been joined in one trial. We therefore reverse the convictions and the order denying Leach's postconviction motion and remand for new trials.

The state charged Leach with criminal activity in four separate cases. Case No. 2577 alleged that on January 8, 1982, he attempted the first-degree murder of Stanley Blalock at 3424 North 12th Street. Case No. 2581 contained three counts. Count one alleged that on February 8, 1982, he attempted the armed robbery of David Watt at 500 North Water Street. Count two and three alleged

that on January 29, 1982, he committed the armed robbery of Gregory Greenwood and Christine Guenther at 7609 North 60th Street. Case No. 2582 contained two counts. Count one alleged that on February 6, 1982, he committed the armed robbery and false imprisonment of Dale Tech at 4655 North Port Washington Road. Case No. 2583 alleged that on February 6, 1982, he committed the armed robbery of Shang Yu Huei Lee at 4655 North Port Washington Road.

Leach pleaded not guilty and not guilty by reason of mental disease or defect. *See* sec. 971.15, Stats. The trial court appointed Dr. William Crowley to examine Leach regarding his special plea. During this process doubt arose as to Leach's competency to stand trial. Following an evaluation under sec. 971.14, the trial court found him competent to stand trial.

The charges were consolidated for trial. At the conclusion of the guilt phase of the bifurcated trial, the jury found Leach guilty on all of the charges. At the conclusion of the mental responsibility phase, the trial court directed a verdict against Leach by refusing to submit the question of sanity to the jury. The trial court denied Leach's motion for a new trial. Leach appeals from the judgments of conviction and the order denying his motion for a new trial. Other evidence will be detailed as necessary.

Leach's first claim of error relates to his alleged amnesia and has two parts. First, he claims he lacked sufficient mental competency to stand trial because of his amnesia. Second, he argues that he was denied effective assistance of counsel because the amnesia rendered him unable to consult with his attorney.

■■■

Competency may be determined under the standards of secs. 971.13 and 971.14, Stats., or under constitutional standards. In *Muench v. State,* 60 Wis. 2d 386, 210

N.W.2d 716 (1973), the supreme court was faced with essentially the same contentions as Leach presents. The court declared that since the defense of amnesia is an affirmative defense, the defendant has the burden of proving a loss of memory regarding the commission of the crime with which he is charged. *Id.* at 392–93, 210 N.W.2d at 719. In a competency determination, the presence of a mental disease or defect need not be addressed.[1] The inquiry as to competency is coterminous with the entire criminal proceeding. It may be commenced at any phase and may be renewed once it has been initiated. *United States v. Swanson,* 572 F.2d 523, 526 n. 3 (5th Cir.), *cert. denied,* 439 U.S. 849 (1978), *citing Wilson v. United States,* 391 F.2d 460 (D.C. Cir. 1968).

The test for competency is whether the accused "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as a factual understanding of the proceedings against him." *Dusky v.*

___

[1] Leach was tried under sec. 971.13, Stats. (1979–80), which provided: "No person who as a result of mental disease or defect is unable to understand the proceeding against him or to assist in his own defense, shall be tried, convicted, sentenced or committed for the commission of an offense so long as such incapacity endures."

Section 971.13 was amended by ch. 367, Laws of 1981, to provide: "(1) no person who *lacks substantial mental capacity* to understand the proceedings or assist in his or her own defense may be tried, convicted or sentenced for the commission of an offense so long as the incapacity endures." (New material emphasized.) This change brought the statutory test for competency into conformity with *Dusky v. United States,* 362 U.S. 402 (1960). The scope for constitutional competency is broader in that it includes such conditions as are discussed in *United States v. Passman,* 455 F. Supp. 794, 796–97 (D. D.C. 1978), and in Note, *Incompetency to Stand Trial,* 81 Harv. L. Rev. 454, 457–59 (1967).

*United States,* 362 U.S. 402, 402 (1960). *See also* sec. 971.13(1). At the very least, the accused ought to understand the essence of the charge against him, the defenses available, and the essentials of the criminal proceeding. *United States. v. Passman,* 455 F. Supp. 794, 796 (D. D.C. 1978).

After Leach pleaded not guilty by reason of mental disease or defect, the trial court appointed Dr. William Crowley to examine him. In his report, Dr. Crowley expressed doubt as to whether Leach was competent to stand trial and recommended he be given an in-patient evaluation. The court subsequently received a report from the Department of Health and Social Services which concluded that there was no evidence of mental disease or defect that would render Leach unable to understand the proceedings against him or to assist in his own defense. The report included the following opinion of Dr. P.M. Bergen:

This defendant is cognizant of the workings of the court system and the roles that the major participants play. . . . However it appears that he is going to use his amnesia in order not to cooperate with this interviewer and in all probability his attorney so that he does not have to go to trial at this time.

Leach did not challenge the opinions, the findings or the conclusion of the department's report. The trial court found Leach competent to stand trial.

Dr. Crowley and Dr. Kenneth Smail testified during the second phase of the trial. Neither could say positively that Leach had amnesia. The issue of Leach's competency arose again at sentencing. The trial court observed:

So, Mr. Leach may in fact, have an amnesiac problem but the evidence would indicate not only from the doctors and the psychologists but also the manner in which this incident occurred that Mr. Leach in fact was not suffer-

ing or is not suffering from amnesia. It's a strong strong inference that these were cold, calculated crimes committed by Mr. Leach in spite of his indication here and also at the time of the trial and also at his interviews with the medical personnel both at Central State and also here in Milwaukee.

At the hearing on the motion for a new trial, Leach submitted an affidavit by Dr. Michael Vanden Brook. The affidavit indicated that as of November 15, 1983, Dr. Vanden Brook was unable to state to a reasonable degree of professional certainty whether Mr. Leach was suffering from an acute memory loss or was merely malingering.

Whether a party has met the required burden of proof is a question of law. *Thorp Sales Corp. v. Gyuro Grading Co.,* 107 Wis. 2d 141, 153, 319 N.W.2d 879, 884 (Ct. App. 1982), *aff'd,* 111 Wis. 2d 431, 331 N.W.2d 342 (1983). Based on the record before us, we conclude that Leach did not prove by clear and convincing evidence that he suffered from amnesia to the extent that he was unable to understand the proceedings against him or to assist in his own defense.[2] The trial court did not err in find-

---

[2] Section 971.14, Stats. (1979–80), did not specify the standard of proof a criminal defendant must meet in order to show incompetency to stand trial. Section 971.14(4)(b), Stats. (1981–82), provides that the party seeking to establish that the defendant is incompetent must show incompetency "by evidence which is clear and convincing." A Judicial Council Committee's Note (1981) to sub. (4) states: "The standard of proof specified in *State ex rel. Matalik v. Schubert,* 57 Wis. 2d 315, [204 N.W.2d 13] (1973), has been changed to conform to the 'clear and convincing evidence' standard of s. 51.20(13)(e) and *Addington v. Texas,* 441 U.S. 418 (1979)."

*Matalik* held that a defendant who contested the prosecutor's allegation that the defendant was incompetent to stand trial was entitled under the due process clause to a "meaningful hearing" on the issue. 57 Wis. 2d at 326–27, 204 N.W.2d at 18. One of the "essentials" of the hearing was "beyond a reasonable doubt as the

ing Leach competent to stand trial. Further, absent a finding of incompetency because of amnesia, Leach's argument that his condition rendered him unable to consult with his lawyer and therefore denied his right to effective assistance of counsel must also fail.

Leach was charged and convicted of attempted first-degree murder. He contends his trial counsel was ineffective in failing to request an instruction on the lesser included offense of endangering safety by conduct regardless of life. Leach argues that because counsel spent most of his closing argument assailing the sufficiency of evidence to establish the intent element of the attempted murder charge, it is inexplicable that he failed to request the lesser included charge.[3]

At the postconviction hearing, Leach's trial counsel testified as follows:

Q. . . . Is there a tactical reason why you elected not to request that?

A. . . . I cannot recall why I did not ask for a lesser included crime of endangering. I cannot state that it was a strategical or tactical maneuver . . . .

___

quantum of proof necessary for the incompetency determination." *Id.* at 327, 204 N.W.2d at 18. *Matalik* did not specify what standard a defendant claiming incompetency would be required to meet.

*Addington v. Texas* held that in an involuntary mental commitment proceeding, due process required that the state meet the "clear and convincing" standard of proof. 441 U.S. at 432–33. *Addington* had already been decided when Leach was tried. Similarly, sec. 51.20(13)(e), Stats. (1979–80), contained the "clear and convincing evidence" standard and was in effect when Leach was tried. We conclude that the standard of proof stated in the legislature's amendment of sec. 971.14(4) can be imputed to the 1979–80 version of the statute and that Leach was required to prove his incompetency by clear and convincing evidence.

[3] *See Hawthorne v. State*, 99 Wis. 2d 673, 682, 299 N.W.2d 866, 870 (1981): "The conclusion that endangering safety is a lesser included offense of attempted first-degree murder is supported by longstanding precedent in this Court."

. . . .

Q. . . . Is it not possible you inadvertently over-looked the possibility of defending on the basis of lesser included offense?

A. It's possible.

A. I don't think it's likely but I don't recall to this date . . . .

Q. You will agree . . . that the set of cases on its merits constituted a very strong prosecution case?

A. It appears that way . . . , yes.

. . . .

Q. It is safe to say that failure to request may just have been an oversight at the time?

A. Yes it's safe to say or fair to say.

Leach argues that his trial counsel's testimony forces the conclusion that the failure to request the instruction was an oversight. Counsel acknowledged, however, that the state had a strong case. He could not recall why he had not requested the lesser included charge. The record establishes that it was only a possibility, and not a certainty, that counsel's failure to make the request was the result of an oversight. The trial court's comments at the postconviction motion hearing lead us to conclude that it ruled against Leach on this issue because he failed to meet his burden of proof.[4]

---

[4] In ruling on Leach's ineffective-assistance claim, the trial court stated:

A very competent counsel overlooking a lesser-included offense situation does not in my judgment render that gentleman ineffective in his assistance to the defendant. I recall now when he testified here this afternoon that he just doesn't remember about whether he did. He said it's possible, but not likely that I forgot about the lesser-included offenses. But maybe he did. I don't know. He also said, I don't recall why I didn't ask for it. And he doesn't know if it was a tactical decision or not, and he looked at his notes on that, so it's possible that he did think about it and on a tactical basis did not request it. He can't say one way or the other. I can't get into Mr. Steele's head any more than I can get into Mr. Leach's head, but, you know, people in criminal cases,

■
The determination of whether an attorney's conduct results in a violation of the right to effective assistance of counsel is a question of law which we review independently on appeal. *State v. Felton,* 110 Wis. 2d 485, 505, 329 N.W.2d 161, 170 (1983). An essential ingredient of the determination of whether counsel was ineffective is prejudice to the defendant. *Id.* at 503, 329 N.W.2d at 169. " 'If the failure could have had no adverse effect on the defendant, the representation would not have been any more effective had that failure not occurred.' " *Id.* (citation omitted). We therefore must determine whether Leach was prejudiced by his trial counsel's failure to request an instruction on endangering safety.

■
To warrant submission of a lesser included offense instruction, the evidence must demonstrate reasonable grounds both for acquittal on the greater charge and conviction on the lesser charge. *State v. Sarabia,* 118 Wis. 2d 655, 661, 348 N.W.2d 527, 531 (1984). The evidence must be viewed in the light most favorable to the defendant. *Id.* at 662, 348 N.W.2d at 532.

The disⁿinguishing element between attempted first-degree murder and endangering safety by conduct regardless of life is the defendant's intent to kill the victim. If the evidence could reasonably support a finding that [the defendant] did not intend to kill [the victim] but nevertheless engaged in imminently dangerous conduct evincing a depraved mind, regardless of human life, the lesser included offense should have been submitted to the jury.

*Walker v. State,* 92 Wis. 2d 690, 693, 286 N.W.2d 2, 4 (Ct. App. 1979), *aff'd,* 99 Wis. 2d 687, 299 N.W.2d 861 (1981).

---

as has been said many, many times, are entitled to fair trials, not perfect trials. And that's what Mr. Leach got.

The record reveals that on January 8, 1982, Leach and Blalock committed a burglary. Later that day, Leach accused Blalock of purloining some of the fruits of their earlier endeavor. An argument ensued, during which Blalock observed a strange look on Leach's face as though he wanted to kill somebody. Blalock remembered that he had left a pair of boots in Leach's car and said he wanted to retrieve them. Leach accompanied Blalock to the car and unlocked the door. When Blalock reached into the car, Leach shot him in the back.

Blalock turned and asked Leach what he was doing. Leach respor.ded, "You know what I'm doing." Blalock saw that Lec .h was holding a white-handled pistol. Blalock hit Leach and a struggle commenced, during which Leach shot Blalock in the upper left shoulder. Blalock pushed Leach backwards, turned and started running when Leach shot him in the back area of the right hip.

The central issue is whether, when Leach shot Blalock, did he intend to kill him or only to injure him. Intent to kill usually cannot be determined by direct proof. Wis. J I—Criminal 1100 (1980) states: "You may determine such intent . . . indirectly from all the facts in evidence concerning this offense. You may consider any statements or conduct of the defendant which indicate his state of mind. You may find intent to kill from such statements or conduct."

Leach argues, citing *Terrell v. State*, 92 Wis. 2d 470, 285 N.W.2d 601 (1979), that the placement of the three shots in separate, nonvital parts of Blalock's body supports an inference that Leach did not act with intent to kill. *Terrell* is inapposite, however, because its facts are dissimilar to those of the present case. In *Terrell*, the victim became jealous over the undue attention Terrell was paying the victim's wife. The victim physically accosted Terrell, who then shot him several times from a distance of about two feet. *Id*. at 471, 285 N.W.2d at

601. In the present case, there was no evidence that Blalock attacked Leach. Further, the first shot could easily have been fatal. Blalock's doctors decided not to remove that bullet because it had lodged too close to the blood vessel leading to his heart.

Reviewing the evidence in the light most favorable to Leach, we conclude that it does not reasonably support acquittal on the attempted first-degree murder charge. Leach therefore was not denied effective assistance of counsel by counsel's failure to request an instruction on endangering safety by conduct regardless of life.

Leach next contends that by directing a verdict against him in the second phase of his bifurcated trial, the trial court violated the well-established principle that a court may not direct a verdict against a defendant in a criminal case. He reasons that since the second phase is part of the criminal case, *see Hoppenrath v. State,* 97 Wis. 2d 449, 462, 293 N.W.2d 910, 916 (1980), *overruled on other grounds,* 113 Wis. 2d 497, 335 N.W.2d 376 (1983) ; sec. 971.175, Stats., it cannot be taken away from the jury. To support his argument, Leach cites: (1) Comment to Wis J I—Criminal 605 (1982) : "The second phase of a bifurcated trial is considered part of the criminal case;" (2) the supreme court's assumption in *State v. Lehman,* 108 Wis. 2d 291, 318, 321 N.W.2d 212, 225 (1982), that a unanimous verdict is required in the second phase of a bifurcated trial; (3) *Hoppenrath,* 97 Wis. 2d at 456, 293 N.W.2d at 914, where the court said the adjudication of not guilty by reason of a mental disease or defect is the equivalent of an acquittal; and (4) *State v. Bergenthal,* 47 Wis. 2d 668, 685–86, 178 N.W.2d 16, 26 (1970), *cert. denied,* 402 U.S. 972 (1971), where the court said: "The issue as to sanity remained for resolution by the trier of fact. . . . The question of whether the defendant

had met his burden of proof was one of fact for the jury, not one of law for the court."

The state argues that there is no sound reason why a trial court ought not withdraw a defense of insanity from the jury's consideration, as it would withdraw any other defense, if the evidence to support it is insufficient to create a jury question. Citing cases from other jurisdictions, the state reasons that the defense of insanity (if successful) has essentially the same effect as any other affirmative defense, regardless of how it is raised procedurally. The state argues that the insanity defense is not so different that it must be presented to the jury in every case regardless of the amount of insanity evidence produced.

The supreme court decided in *Bergenthal,* 47 Wis. 2d at 685–86, 178 N.W.2d at 26, that the question whether the defendant met his burden of proving insanity must be decided by the jury. We are bound by prior decisions of the Wisconsin Supreme Court. *Livesey v. Copps Corp.,* 90 Wis. 2d 577, 581, 280 N.W.2d 339, 341 (Ct. App. 1979). Our primary responsibility is correcting trial court error. *State v. Mosley,* 102 Wis. 2d 636, 665–66, 307 N.W.2d 200, 216–17 (1981). We conclude the trial court erred by taking the sanity issue from the jury. We therefore reverse.

Lastly, Leach contends he was denied his due process right to a fair trial because the trial court joined four separate criminal incidents for trial. He argues that the charges relating to the four incidents were improperly joined under sec. 971.12(1), Stats. He further argues that if the charges were properly joined, the trial court misused its discretion by denying severance, because the danger of unfair prejudice outweighed any state interest in joinder.

On March 26, 1982, the state moved to join all the charges for trial together. To support its argument for

joinder, the state theorized that after the attempted murder of January 8, 1982, Leach committed the robberies of January 29, February 6 and February 8 as part of a scheme to provide funds so he could flee the jurisdiction. The trial court postponed consideration of this motion so that Leach could file a responsive brief and it could determine the issue of competency. The record contains no affidavits or testimony to support the state's theory, however, nor is there any indication that the trial court ever considered or decided the motion. On November 29, 1982, before trial began, defense counsel directed the trial court's attention to this state of the record. He argued against joinder of the charges. The trial court ordered: "There will be no severance. I think we went over that already at the time the motion for consolidation was made."

The state concedes that the various counts with which Leach is charged do not meet the standard for joinder stated in sec. 971.12(1), Stats. It asserts, however, that joinder was within the "spirit of the statute" and argues that the general policy of the state is to permit the joinder of multiple counts for trial in the interest of efficient judicial administration if substantial prejudice does not result to the accused. Our examination of the development of sec. 971.12(1) leads us to conclude that the charges were improperly joined.

Section 971.12(1), Stats., details the standards that must be met for permissive joinder of crimes, while sec. 971.12(3) sets forth the procedure by which a defendant may obtain relief from prejudicial joinder. These sections are the equivalents of Federal Rules of Criminal Procedure 8(a) and 14. *See* Judicial Council Committee Note to sec. 971.12 in sec. 63, ch. 255, Laws of 1969 ("Sub. (1) is F.R. Cr. P. 8(a) restated. . . . Sub. (3) is taken from F.R. Cr. P. 14 . . . .").

Before sec. 971.12(1) was enacted, permissive joinder was governed by sec. 955.14, Stats. (1955), and its prede-

cessor, sec. 355.14. It was well recognized that these statutes lacked the precision and clarity of Federal Rule 8. *See* Remington and Joseph, *Charging, Convicting, and Sentencing the Multiple Criminal Offender,* 1961 Wis. L. Rev. 528, 536 and n. 42; Tibbs, *Criminal Procedure Under Proposed Federal Rules Compared with Wisconsin Statutes,* 28 Marq. L. Rev. 75, 82 (1944). In interpreting sec. 355.14, Stats. (1933), the supreme court declared:

In a criminal case, at least so far as the pleading is concerned, no reasonable grounds exist for not including in the same indictment offenses committed by the defendant, even though they differ from each other, vary in degree of punishment, and were committed at different times "and the accused tried upon the several charges at the same time, provided that the offenses be of the same general character, and provided the mode of trial is the same." [Citation omitted.]

*Gutenkunst v. State,* 218 Wis. 96, 99, 259 N.W. 610, 611–12, *cert. denied,* 296 U.S. 608 (1935). The court recognized, however, that such a position "places upon the trial court the heavy responsibility of seeing that the charges are so limited as to be prosecuted in good faith without confusing the jury, or putting such a burden upon the defendant as to render it doubtful that he will be able properly to defend himself." *Id.* at 100, 259 N.W. at 612. *Gutenkunst* concerned the joining of two charges of sodomy committed a year apart with different parties and an unrelated charge of contributing to the delinquency of a minor. The court held that these charges were properly joined, even though they were based on conduct which occurred at different times and affected different victims. In dissent, Justice Nelson surveyed the case law interpreting sec. 355.14 from its inception in 1871. Foreshadowing the development of more precision in our permissive joinder statute, he opined:

In none of our cases does it appear that we have approved of the proposition that two separate or distinct offenses, committed at different times upon or involving different persons or accomplices, and provable by different witnesses, though of the same class of crime, and violative of the same statute, may be joined in one information or indictment, and so submitted to the jury, against the objection of the defendant. . . . We may not, in the absence of legitimate authority, change the rule of the common law with respect to indictments which the legislature recognized in 1871 as the rule applicable to the joining of different offenses in an information.

*Id.* at 109, 259 N.W. at 615–16 (Nelson, J., dissenting).

The similarity between the federal and Wisconsin rules governing joinder has been recognized. *Francis v. State,* 86 Wis. 2d 554, 557, 273 N.W.2d 310, 312 (1979). Federal case law therefore may be helpful in interpreting the state statute. *See State v. Hoffman,* 106 Wis. 2d 185, 208 n. 8, 316 N.W.2d 143, 156 (Ct. App. 1982). In reviewing the federal cases dealing with joinder, we note a tendency to lump together the discussions of joinder of charges with joinder of defendants. Although the analysis of either problem may be essentially the same, there is an important distinction. Rule 8(a) applies only to multiple charges against a single defendant.

The state argues that if the charges were misjoined, the error was harmless. In commenting on the policy considerations of balancing the interest of the accused versus the public's interest in the efficient administration of justice, the First Circuit Court of Appeals has stated: "Rule 8 'set the limits of tolerance' beyond which the danger of prejudice outweighs the benefit, and any joinder which does not fall within Rule 8 is 'per se impermissible.'" *United States v. Turkette,* 632 F.2d 896, 906 (1st Cir. 1980), *rev'd on other grounds,* 452 U.S. 576 (1981) (citation and footnote omitted). In *United States v. Graci,* 504 F.2d 411, 413–14 (3rd Cir. 1974), the

court examined whether the harmless error rule could be applied to violations of Rule 8(a). The court concluded that Rule 8's history indicates that its provisions are mandatory and that therefore misjoinder requires reversal. *See also* 8 J. Moore, *Moore's Federal Practice* para. 8.04[2] (2d ed. 1984); C. Wright, *Federal Practice and Procedure* sec. 143, at 491 n. 19 (1982).

An additional consideration is that applying the harmless error rule to a misjoinder under sec. 971.12(1), Stats., will in effect eliminate the subsection. Section 971.12(3) allows severance as relief from prejudicial joinder. If we were to hold that misjoinder could be harmless and that reversal is required only when the misjoinder was prejudicial, sec. 971.12(1) would no longer be necessary. Statutory constructions which render part of the statute surplusage should be avoided. *Donaldson v. State,* 93 Wis. 2d 306, 315, 286 N.W.2d 817, 821 (1980).

Let us now return to the procedural setting of this case. We have already mentioned the theory hypothecated by the state to justify joinder and will not repeat it. The state also argued to the trial court that proof of the attempted murder would be relevant and admissible in the other actions as proof of motive and that the armed robberies have an identical *modus operandi,* occurred within days of each other, and constituted a common scheme or plan.

Section 971.12(1), Stats., provides that two or more crimes may be joined if they are (1) of the same or similar character; (2) based on the same act or transaction; or (3) based on two or more acts or transactions connected together or constituting parts of a common scheme.

Whether joinder was proper is a question of law. *Hoffman,* 106 Wis. 2d at 208, 316 N.W.2d at 156. We

therefore need not defer to the trial court's conclusion. "[C]rimes are not of the same character because they constitute violations of the same statute. Crimes are of the same or similar character if they are 'the same type of offenses occurring over a relatively short period of time, and the evidence as to each count overlaps.' " *Id.* (citation omitted).

A review of the record of the guilt phase of Leach's trial reveals the following. Leach did not testify on his own behalf. He produced one character witness. Identification of Leach was never contested. The only other witnesses to present testimony were the victims and the investigating officers. No facts were proffered to support the state's theory that the attempted murder precipitated the robberies because Leach wanted to obtain funds to flee the jurisdiction. The state's theory is speculative at best. The methods used in the two armed robberies at the North Shore Motel were similar, as were the methods similar in the two armed robberies at 7608 North 60th Street. As between these two incidents, however, there is no commonality as to the time of occurrence, the type of victims, the setting or the method of execution. Nor can we conclude that the four incidents of armed robbery are "of the same or similar character" as the attempted first-degree murder.

The common thread that runs through all of these incidents is a pistol with white handgrips. It is conceivable that this element might provide an underpinning for possible joinder. Absent a common scheme or other similarity of circumstances, however, we conclude it is insufficient to warrant the introduction of "other crimes" evidence because identification was never really an issue. Therefore, although the trial court never explicitly decided the issue of joinder, we conclude after reviewing the record that joinder was improper under

sec. 971.12(1), Stats. We further conclude that the misjoinder cannot be considered harmless error and requires reversal of the convictions.

*By the Court.*—Judgments and order reversed and cause remanded for proceedings consistent with this opinion.