COURT OF APPEALS
DECISION
DATED AND FILED

June 9, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2019AP504**

Cir. Ct. No. **1995CF951060**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

---

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

BOOKER TELEFARO SHIPP, III,

DEFENDANT-APPELLANT.

---

APPEAL from an order of the circuit court for Milwaukee County: MARK A. SANDERS, Judge. *Affirmed.*

Before Brash, P.J., Dugan and Donald, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.   Booker Telefaro Shipp, III, *pro se*, appeals from an order of the circuit court that denied his motion for postconviction relief without a

hearing. Shipp alleges that his postconviction attorney was ineffective for failing to challenge trial counsel's performance on three issues. We agree with the circuit court that none of the issues Shipp raises are clearly stronger than issues that were previously raised, so we affirm the order.

## BACKGROUND

¶2      Shipp was charged in an amended information with three counts of armed robbery and one count of first-degree intentional homicide, all as a party to a crime. A jury convicted Shipp on two counts of armed robbery and the homicide. The homicide charge stemmed from the shooting of Glendale police officer Ronald Hedbany on October 28, 1994, as Shipp fled the scene of a bank robbery he had committed. Shipp was also convicted of the January 28, 1995 armed robbery of a liquor store. The trial court[1] sentenced Shipp to life imprisonment, with a parole eligibility date of November 2, 2095, for the homicide, plus two consecutive terms of forty years' imprisonment for the robberies.

¶3      Shipp's postconviction attorney filed a postconviction motion, listing eight issues for review: (1) the trial court erred by concluding a witness was privileged to refrain from testifying under the Fifth Amendment, thereby denying Shipp the "right to compulsory process"; (2) the trial court erroneously

---

[1] The Honorable Maxine A. White presided at trial, sentencing, and the original postconviction proceedings. We refer to Judge White as the trial court. The motion at issue in the current appeal was reviewed and denied by the Honorable Mark A. Sanders. We refer to Judge Sanders as the circuit court.

Judge White, who was recently appointed as a court of appeals judge, was not involved in the consideration of this appeal.

refused to strike a juror for cause; (3) the trial court failed to sustain Shipp's objection that a witness's in-court identification of him was impermissibly suggestive and unreliable; (4) failure to sever the armed robbery and related homicide from the other two armed robbery charges; (5) the State's failure to turn over all exculpatory evidence; (6) Rita Parker's testimony and out-of-court statements were "the result of illegal coercion on the part of agents of the [S]tate" and should have been suppressed; (7) the trial court erroneously exercised its discretion "in its decision concerning the admission of several pieces of evidence and testimony"; and (8) trial counsel was ineffective. The trial court denied the motion without a hearing, noting that the brief in support of the motion "addresses only five of these topics[.]" Shipp appealed. On appeal, he renewed only three of his issues: those relating to the privileged witness, severance, and the State's failure to disclose exculpatory evidence. *See State v. Shipp*, No. 1997AP2323-CR, unpublished slip op. at 3 (WI App Dec. 29, 1998). We rejected each claim and affirmed. *See id.* at 3-7.

¶4      In November 2018, Shipp filed the motion for postconviction relief, pursuant to WIS. STAT. § 974.06 (2017-18),[2] that underlies this appeal. Shipp alleged that his postconviction attorney had been ineffective for failing to challenge trial counsel's performance on three issues. First, Shipp asserted that the autopsy report reflected five gunshot wounds to the officer's extremities, and trial counsel should have argued that "[g]unshot wounds to the extremities have long been held to be non-vital body parts, and have long been held to negate an intent to kill," which would have supported Shipp's request for lesser-included

---

[2] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

jury instructions on lower degrees of homicide. Second, Shipp argued that trial counsel should have impeached co-conspirator Laron C. Bourgeois "with his prior statements to Milwaukee Police" that Shipp had said he did not "mean to kill" the officer; Shipp believed this would have been a way of introducing evidence regarding his intent in support of his request for lesser-included instructions. Finally, in denying Shipp's request for lesser-included instructions, the trial court commented that "[t]he only statement that is even minorly associated with anything less is a statement by Rita Parker, who is purported to be incredible by the defense, that … [Shipp] felt badly after the commission" of the homicide. Shipp complained that the trial court "drastically understates Rita Parker's actual trial testimony" and trial counsel "should have Objected to this drastic understatement[.]"

¶5      The circuit court denied Shipp's motion without a hearing. It noted that Shipp's remarks to Bourgeois would have been inadmissible hearsay and that the officer's wounds were not limited to his extremities. The circuit court also concluded that even if the above information had been admissible and sufficient to support lesser-included jury instructions, there was no prejudice to Shipp from trial counsel's failure to raise those issues because the jury, having convicted Shipp of the greater offense, never would have moved on to consider the lesser offenses. Shipp appeals.

## DISCUSSION

¶6      "A hearing on a postconviction motion is required only when the movant states sufficient material facts that, if true, would entitle the defendant to relief." *State v. Allen*, 2004 WI 106, ¶14, 274 Wis. 2d 568, 682 N.W.2d 433. Whether the motion alleges such facts is a question of law. *See id.*, ¶9. If the

4

motion does not raise sufficient material facts, if the motion presents only conclusory allegations, or if the record conclusively shows the defendant is not entitled to relief, then the decision to grant or deny a hearing is left to the circuit court's discretion. *See id.* A circuit court's discretionary decisions are reviewed for an erroneous exercise of that discretion, a deferential standard. *See id.*

¶7 Absent a sufficient reason, a defendant may not bring claims in a WIS. STAT. § 974.06 motion if the claims could have been raised in a prior motion or direct appeal. *See State v. Escalona-Naranjo*, 185 Wis. 2d 168, 185, 517 N.W.2d 157 (1994); *State v. Romero-Georgana*, 2014 WI 83, ¶34, 360 Wis. 2d 522, 849 N.W.2d 668. Certain claims, like claims of ineffective assistance of trial counsel, must be preserved by a postconviction motion. *See State ex rel. Rothering v. McCaughtry*, 205 Wis. 2d 675, 677-78, 556 N.W.2d 136 (Ct. App. 1996). Thus, ineffective assistance of postconviction counsel may sometimes constitute a sufficient reason for not raising a claim in an earlier proceeding. *See id.* at 682.

¶8 For a court to conclude that an attorney rendered ineffective assistance, the defendant must show that counsel's performance was deficient and that the deficiency was prejudicial. *See Allen*, 274 Wis. 2d 568, ¶26. To demonstrate deficient performance, the defendant must show facts from which we can conclude that the attorney's representation fell below objective standards of reasonableness. *See State v. McDougle*, 2013 WI App 43, ¶13, 347 Wis. 2d 302, 830 N.W.2d 243. To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). The defendant must prevail

5

on both parts of the test to be afforded relief. *State v. Johnson*, 153 Wis. 2d 121, 127, 449 N.W.2d 845 (1990).

¶9    "An allegation that postconviction counsel failed to bring a claim that should have been brought is an allegation that counsel's performance was constitutionally deficient[.]" *Romero-Georgana*, 360 Wis. 2d 522, ¶43. As part of proving deficiency, the defendant must show that the unraised issue was "clearly stronger" than the issues actually pursued by postconviction/appellate counsel. *Id.*, ¶¶44-45; *see also State v. Starks*, 2013 WI 69, ¶66, 349 Wis. 2d 274, 833 N.W.2d 146. When a claim of ineffective postconviction counsel is based on the failure to raise ineffective assistance of trial counsel, the defendant must also show that trial counsel actually was ineffective. *State v. Ziebart*, 2003 WI App 258, ¶15, 268 Wis. 2d 468, 673 N.W.2d 369. If trial counsel was not ineffective, then postconviction counsel was not ineffective for failing to challenge the trial attorney's performance. *See id.*

### I.  Location of Officer's Injuries

¶10    According to Shipp, the autopsy report "determined that [Officer] Hedbany had sustained five gunshot wounds to his extremities[.]"[3]  In his postconviction motion, Shipp described these injuries:  "The first gunshot wound was to the left front armpit.  The second gunshot wound was to the left forearm. The third gunshot wound was to the right leg.  The fourth gunshot wound was to the right leg.  The fifth gunshot wound was to the rear upper thigh."  Shipp

---

[3] The autopsy report is not part of the current record on appeal, and it does not appear that the report was ever formally introduced at trial; Shipp's description of the report comes from the criminal complaint.

contends that gunshot wounds to the extremities "have long been held to negate an intent to kill[,]" and trial counsel should have so argued. In support of his premise, Shipp cited *Terrell v. State*, 92 Wis. 2d 470, 285 N.W.2d 601 (1979). The circuit court concluded *Terrell* was inapposite and noted that the officer's injuries were not limited to his extremities. On appeal, Shipp insists that "[t]he FACTS are that [Officer] Hedbany was shot ONLY in his extremities[.]" We agree with the circuit court.

¶11    First, Shipp does not provide an authoritative definition of "extremities," but its relevant dictionary definition is "a limb (as of the body) or other appendage: an arm or leg … a hand or foot[.]" *See extremity*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 808 (unabr. 1993); *see also DNR v. Wisconsin Power & Light Co.*, 108 Wis. 2d 403, 408, 321 N.W.2d 286 (1982) ("The ordinary and accepted meaning of a word can be established by reference to a recognized dictionary[.]"). A gunshot wound to the armpit is not a wound to an extremity; the testifying medical examiner actually described this injury as "in the high left lateral side chest wall up under the armpit." The examiner also testified that there was a wound "in the back of the neck, right at the base of the neck and the top of the chest." This is also not a wound to an extremity.

¶12    Second, *Terrell* does not support Shipp's argument. Defendant Eugene Terrell testified that he and victim Cobbs had an argument during which Cobbs "knocked him to the floor and came at him." *See id.*, 92 Wis. 2d at 471. While on the floor, Terrell pulled out a gun and shot Cobbs several times from a distance of about two feet. *See id.* Terrell was charged with first-degree murder, *see id.*, but the trial court also gave the jury lesser-included instructions for second-degree murder at the State's request and manslaughter, based on excessive

7

defensive force, at Terrell's request, *see id.* at 471-72. The jury convicted Terrell of second-degree murder.[4]

¶13 On appeal, Terrell argued that the second-degree murder instruction was inappropriate because there was no evidence to negate his intent to kill Cobbs. The supreme court noted that Terrell had testified "that his mind 'was like a total blank.' The evidence also shows that Cobbs was shot in widely separate parts of his body,[5] a fact which could reasonably demonstrate to the jury that Terrell did not aim at vital portions of Cobbs' body with the specific intent to kill." *See id.* at 474. Thus, the supreme court concluded that under one reasonable view of the evidence, "Terrell's conduct was imminently dangerous and evinced a depraved mind regardless of human life. Under that view, it could also be reasonably said that the evidence negated the specific intent to kill." *Id.* at 474-75.

¶14 Here, multiple witnesses testified that they watched Shipp approach the officer's squad car and shoot him. One witness testified that he saw a person run out of a parking lot, down the road and past his car, as a police car turned the corner. The runner then stopped, "turned to the police officer and pointed his gun at him, and he fired four times" into the squad car's driver's window. A second witness saw the police car turn the corner, then a man "walked right up to the car, pulled out a gun, and shot the police officer" four or five times—"just stuck out

---

[4] Second-degree murder occurred if a person caused the death of another human being not intentionally but "[b]y conduct imminently dangerous to another and evincing a depraved mind, regardless of human life[.]" *See* WIS. STAT. § 940.02(1) (1979-80). It is the approximate equivalent of modern first-degree reckless homicide, which penalizes "recklessly caus[ing] the death of another human being under circumstances which show utter disregard for human life." *See* § 940.02(1) (2017-18).

[5] The opinion in *State v. Terrell*, 92 Wis. 2d 470, 285 N.W.2d 601 (1979), does not specify the location of Cobbs' injuries.

his arm and shot the cop." A third witness heard four or five gunshots and, when she looked out the window, she saw a gunman at the squad car with his arm extended into the driver's window. Shipp's behavior was thus significantly different from that of a prone Terrell firing at assailant Cobbs in an arguable act of self-defense.

¶15 On appeal, Shipp also cites to an unpublished per curiam decision, *State v. Evans*, No. 2002AP1869-CR, unpublished slip op. (WI App July 24, 2003).[6] *Evans* does not aid Shipp, either. While we found that defendant Iran D. Evans was entitled to a lesser-included jury instruction based on the victim's injuries to the right arm, left buttock, left thigh, and left leg, we also stated that "there is no evidence that Evans aimed at *or hit* a vital part of [the victim's] body." *See id.*, ¶¶14-15 (emphasis added). Here, the medical examiner testified that the armpit wound went through the officer's rib cage and into his chest, "through the upper lobe of the left lung, and then passed out of the chest wall in back and passed out of the body at the base of the neck. It caused bleeding in the lung and around the lung and into the left chest cavity." The medical examiner had also identified nine gunshot wounds in total, and explained that wound number eight, which entered the officer's left thigh,

> passed upwards through the pelvis and into the abdominal cavity, where it caused a tear in the rectum and then passed up through the entire abdominal cavity, causing tears in the vascular supporting structures of the—for the bowel, multiple holes in the bowel, and then it went through the liver from bottom to top and passed out of the liver and

---

[6] Unpublished per curiam opinions "may not be cited in any court of this state as precedent or authority, except to support a claim of claim preclusion, issue preclusion, or the law of the case[.]" WIS. STAT. RULE 809.23(3)(a)-(b). Further, when a party does cite an unpublished case, that party is required to provide a copy of the opinion, *see* RULE 809.23(3)(c), which Shipp has not done.

9

> entered the right chest cavity, way off at the side, immediately exited the chest cavity between ribs, and the bullet then went into the soft tissues of the right chest wall where it was recovered.

¶16 The medical examiner described the armpit wound as potentially fatal and the left thigh wound as likely fatal within several minutes because of significant blood loss; in particular "[t]he liver lacerations were extensive and are, even in an operating room, are extremely difficult to control[.]" Shipp's case is therefore unlike *Evans* because the evidence in this case shows that vital parts of the officer's body were hit. In fact, *Evans* noted that we had rejected a *Terrell*-based argument in another case "in part because the defendant had shot the victim in the back, and a bullet had lodged near a key blood vessel that led to the victim's heart." *See Evans*, No. 2002AP1869-CR, ¶12. Accordingly, a *Terrell* argument that shots to the extremities negates intent would not have succeeded in this case.

### 2. Impeaching Bourgeois

¶17 Bourgeois drove Shipp to and from the bank. After the robbery, they returned to the home Bourgeois shared with his girlfriend. A news report about the robbery was on the television. At trial, on direct examination, the State asked Bourgeois if Shipp said anything while the news broadcast was on. Bourgeois answered, "He was like—he hoped the officer died because that's the only witness." Shipp contends that trial counsel was ineffective for not impeaching Bourgeois with a prior inconsistent statement to police, where Bourgeois reported that Shipp had said, "I was just trying to get away, I didn't mean to kill him." However, Bourgeois' statement to police is double hearsay, and Shipp did not establish in his postconviction motion any theory by which that statement would have been admissible.

10

¶18 "Impeachment evidence" is "[e]vidence used to undermine a witness's credibility." *See evidence*, BLACK'S LAW DICTIONARY 676 (10th ed. 2009). "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." WIS. STAT. § 908.01(3). Hearsay is inadmissible except as otherwise provided by rule. *See* WIS. STAT. § 908.02. Bourgeois' statement to police, as noted, contains two layers of hearsay: the first layer is Bourgeois' out-of-court statement to police, and the second layer is Shipp's out-of-court statement to Bourgeois. Hearsay within hearsay is not admissible unless "each part of the combined statements conforms with an exception to the hearsay rule" in WIS. STAT. ch. 908, *see* WIS. STAT. § 908.05, and Shipp's statement is inadmissible through Bourgeois.

¶19 One exception to the prohibition on hearsay is an admission by a party opponent—*i.e.*, the party's own statement offered against that party. *See* WIS. STAT. § 908.01(4)(b)1. This exception is why the State could ask Bourgeois what Shipp said during the news broadcast—that information is Shipp's own statement offered against him—but trial counsel could not similarly ask Bourgeois about what he said Shipp said: Shipp is not his own opponent and would not have been offering the statement against himself. Moreover, though Shipp insists he wanted to use Bourgeois' prior "inconsistent" statement to impeach him, Shipp is also very clear that he wanted to introduce Bourgeois' statement for the ultimate truth of the matter asserted—Shipp's claim that he did not intend to kill Officer

Hedbany. This latter use is impermissible, making Bourgeois' prior statement inadmissible by trial counsel.[7]

### III. Rita Parker's Testimony

¶20 Shipp also complains that the circuit court "does NOT ADDRESS the issue of … [trial counsel's] failure to object to the denial of a lesser included jury instruction," which Shipp believes was supported by Rita Parker's testimony. Shipp contends that this was his "strongest issue of ineffectiveness[.]"

¶21 Parker was Shipp's girlfriend at the time. After the homicide, Shipp called Parker at work and asked her to come see him at Bourgeois' home. When Parker entered, the news broadcast was still on the television. Shipp points to the following exchange between the State and Parker on direct examination:

> Q     And when the newscast broadcast that the officer had died, did Mr. Shipp say anything to you?
>
> A     It was -- it wasn't necessarily to me but, you know, his head was down and it was like, I didn't mean for that to happen. I didn't mean to do that.

From this bit of Parker's testimony, Shipp argues:

> The key word in Ms. Parker's testimony is Mean. Mean is defined in the Webster's Dictionary as Intent, and Intent is a mandatory element of First Degree Intentional Homicide. So if Ms. Parker's testimony is that Shipp said, "I didn't mean for that to happen. I didn't mean to do that (kill P.O. Hedbany)", as a response to the news case that the officer

---

[7] We also note that Shipp's purported statement after the shooting is not necessarily indicative of a lack of intent during the shooting. "While the law requires that the defendant acted with intent to kill, it does not require that the intent exist for any particular length of time before the act is committed." WIS JI—CRIMINAL 1010. "The intent to kill may be formed at any time before the act, including the instant before the act, and must continue to exist at the time of the act." *Id.*

> had died. Then the meaning of Ms. Parker's testimony is that Shipp said, "I did not Intend to kill the officer". This is powerful lesser included testimony that the defense counsel … should have made a note of, because he requests a lesser included jury instruction[.]

¶22 "The submission of a lesser-included offense instruction is proper *only* when there exists reasonable grounds in the evidence both for acquittal on the greater charge and conviction on the lesser offense." **State v. Borrell**, 167 Wis. 2d 749, 779, 482 N.W.2d 883 (1992). "In determining the propriety of a defendant's request for a lesser-included offense instruction, the evidence must be viewed in the light most favorable to the defendant and the requested instruction." **State v. Foster**, 191 Wis. 2d 14, 23, 528 N.W.2d 22 (Ct. App. 1995). "Further, 'the lesser-included offense should be submitted only if there is a reasonable doubt as to some particular element included in the higher degree of crime.'" *See id.* (citation omitted).

¶23 In rejecting Shipp's request for lesser-included instructions on first-degree reckless homicide and second-degree intentional homicide, the trial court noted that even viewing the evidence in the light most favorable to Shipp,

> there's minuscule information in the record to suggest that there is a lesser[-]included offense substantiated by anything. The only statement that is even minorly associated with anything less is a statement by Rita Parker, who is purported to be incredible by the defense,[8] that he, the person that she named, Booker Shipp, felt badly after the commission of the offense[.]"

---

[8] Parker initially told police that she knew nothing about the robbery and the homicide, though she testified at trial that Shipp had told her about his involvement. In closing, trial counsel argued that Parker "can be summed up in one old adage. Hell hath no fury as a woman scorned…. [S]he admits she's a liar."

Shipp complains that the trial court was "mis-quoting and under-quoting the strength/potency of Ms. Parker's lesser included testimony" and asserts that trial counsel should have "objected to the denial" and made a counterpoint based on *Terrell* regarding shots to the extremities negating intent.

¶24    As we have seen, the *Terrell* argument would not have succeeded. Moreover, Shipp has developed no other argument to explain why further objection or argument from trial counsel, who had already requested the lesser-included instructions, would have succeeded in convincing the trial court to view Parker's testimony as Shipp's declaration of a lack of intent rather than the expression of remorse the trial court believed it to be. We are therefore unpersuaded that trial counsel was deficient for failing to further contest the trial court's ruling on the lesser-included instructions.

¶25    Because none of Shipp's arguments establish ineffective assistance of trial counsel, postconviction counsel was not ineffective for failing to raise those issues in the postconviction motion. *See Ziebart*, 268 Wis. 2d 468, ¶15. Shipp has thus identified no clearly stronger issues overlooked by postconviction counsel, so there is no sufficient reason to avoid the *Escalona* bar on the underlying WIS. STAT. § 974.06 motion. The circuit court properly denied that motion without a hearing.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

14